# UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| DOKIAH GRAY (#K-70373), ) | |
| ) | |
| Plaintiff, ) | |
| ) | No. 09 C 7720 |
| v. ) | |
| ) | Hon. Elaine E. Bucklo |
| NICHOL TAYLOR, et al., ) | |
| ) | |
| Defendants. ) | |

## MEMORANDUM OPINION AND ORDER

The plaintiff, a state prisoner, has brought this *pro se* civil rights action pursuant to 42 U.S.C. § 1983. The plaintiff claims that the defendants, officials at the Stateville Correctional Center, violated the plaintiff's constitutional rights by harassing and retaliating against him for speaking out about, and eventually filing a grievance over, a prison employee's misconduct, and by denying him due process in prison disciplinary proceedings. This matter is before the Court for ruling on the defendants' motion to dismiss the complaint for failure to state a claim. For the reasons stated in this order, the motion is granted only as to defendants Randle and Johnson, and as to the plaintiff's disciplinary claim.

It is well established that *pro se* complaints are to be liberally construed. *Haines v. Kerner*, 404 U.S. 519, 520 (1972); *see also McCormick v. City of Chicago*, 230 F.3d 319, 325 (7th Cir. 2000). Rule 8(a)(2) of the Federal Rules of Civil Procedure requires only "a short and plain statement of the claim showing that the pleader is entitled to relief," in order to " 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.' " *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson,* 355 U.S. 41, 47, (1957)). To satisfy the notice pleading requirements of Fed. R. Civ. P. 8(a)(2),

the plaintiff need only state his basic legal claim and provide "some indication . . . of time and place." *Thompson v. Washington*, 362 F.3d 969, 971 (7th Cir. 2004). While a complaint challenged by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do. *Bell Atlantic Corp.*, 550 U.S. at 555 (citations omitted).

In addition, when considering whether to dismiss a complaint for failure to state a claim upon which relief can be granted, the court takes the allegations in the complaint as true, viewing all facts–as well as any inferences reasonably drawn therefrom–in the light most favorable to the plaintiff. *Marshall-Mosby v. Corporate Receivables, Inc.*, 205 F.3d 323, 326 (7th Cir. 2000); *Bell Atlantic Corp.*, 550 U.S. at 555 (citing *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 514 (2002)). Dismissal should be denied whenever it appears that a basis for federal jurisdiction in fact exists or may exist and can be stated by the plaintiff. *Norfleet v. Vale*, No. 05 C 0926, 2005 WL 3299375, at *1 (N.D. Ill. Dec. 5, 2005) (Zagel, J.). A well-pleaded complaint may proceed even if it appears "that actual proof of those facts is improbable, and that a recovery is very remote and unlikely." *Bell Atlantic Corp.*, 550 U.S. at 556. Nevertheless, the factual allegations in the complaint must be enough to raise a right to relief above the speculative level. *Id.*, 550 U.S. at 555. Furthermore, a plaintiff can plead himself or herself out of court by pleading facts that undermine the allegations set forth in the complaint. *See, e.g., Kolupa v. Roselle Park Dist.*, 438 F.3d 713, 715 (7th Cir. 2006).

**FACTS**

The plaintiff is a state prisoner, confined at the Stateville Correctional Center at all times relevant to this action. Defendant Nichol Taylor is a correctional officer at Stateville. Defendants Anthony Ramos and Mark Hosey are, respectively, the Warden and Assistant Warden at Stateville. Defendant Tammy Garcia is an inmate placement officer at Stateville. Defendant Darryl Johnson is an internal affairs investigator at the prison. Defendants Edwards and Niles hold the rank of correctional majors. Defendant Michael Randle is the Director of the Illinois Department of Corrections.

The plaintiff alleges the following facts, which will be assumed true for purposes of this motion:

In August 2009, defendant Taylor was temporarily assigned to the prison library. The plaintiff was employed at that time as a law clerk.

On August 10, 2009, Taylor photocopied a postconviction petition for an inmate (Jones). The copies totaled some 875 pages. When Jones reviewed his copies, he discovered that Taylor had made two-sided copies rather than using only the front-side of paper. Jones protested that the court would not accept two-sided copies.

The plaintiff relayed Jones' concerns to Taylor, who directed the plaintiff to convince Jones that the incorrect copies would not be a problem. The plaintiff informed Taylor that the postconviction petition might be dismissed for being two-sided, but she refused to re-copy the voluminous documents. The plaintiff urged Jones to complain to Taylor's supervisor, and Jones did so.

Beginning August 11, 2009, Taylor began "a campaign of harassment against the plaintiff." She would threaten to fire the plaintiff on a daily basis, making such as remarks

3

as, "I have sixty days over here [i.e., assigned to the law library] and I'm going to fire you before I leave;" "I'm going to send you to segregation;" "I'm going to fuck you around;" and "You fronted me and I'm going to remember this shit."

Taylor warned the plaintiff that she was a veteran at Stateville with many friends in high places and that she could "get done to you whatever I want and it ain't shit you can do about it."

On August 17, 1999, paralegal Crystal Mason [not a defendant] called the plaintiff into her office for a meeting. Mason informed the plaintiff that Taylor did not want him working in the law library. The plaintiff explained the situation, apparently to Mason's satisfaction.

On August 18 and 19, 2009, Taylor admonished the plaintiff, "Your time is coming soon."

On August 19, 2009, the plaintiff was discharged from his prison job assignment; however, he was not notified at that time that his job had been terminated. Only months later, in response to a grievance, did the plaintiff learn that his job assignment "ended" on August 19, 2009.

On August 20, 2009, Taylor went to the plaintiff's housing unit and told a sergeant not to allow the plaintiff out of his cell to go to work because she had issued him a disciplinary report. If an inmate is issued a disciplinary report, he may not report to his job assignment. However, Taylor had not, in fact, issued any disciplinary report.

On September 4, 2009, the plaintiff spoke to a superintendent about the status of the disciplinary proceedings. The superintendent' informed the plaintiff that no disciplinary report had been written, served, or was pending against him.

4

The plaintiff then contacted paralegal Mason about his job status. Mason told the plaintiff that she did not know why he had not been reporting to work and she invited him to return to his job. The plaintiff therefore returned to the law library.

When Taylor saw the plaintiff that same day, she exclaimed, "Motherfucker, your ass is back. I thought I told your motherfucking ass don't come back over here. I'll show your ass."

To help him avoid conflict, Mason asked the plaintiff to accompany her on her rounds of the prison's F-House. A law library officer with whom the plaintiff was friendly followed the two to the housing unit and encouraged him to "make this easy on us all" by quitting. The officer warned the plaintiff that Taylor and her husband had many "friends."

On September 4, 2009, the plaintiff filed a grievance against Taylor for misconduct, harassment, and retaliation. The plaintiff also wrote letters to the internal affairs office as well as to defendants Hosey, Ramos, and Randle. In addition, the plaintiff asked defendant Garcia to give him a new job assignment.

On September 8, 2009, a law library sergeant stopped the plaintiff outside of his housing unit. The officer told the plaintiff he could not report to work because Taylor did not want him there. He promised to look into the matter for the plaintiff, but repeated that the plaintiff was not welcome at the law library.

On September 9, 2009, the plaintiff was awakened at 6:20 a.m., ordered out of bed, and handcuffed. He was left to sit in the lunch room for over two hours with his hands cuffed behind his back. He was strip-searched and repeatedly–between eight and ten times–ordered to bend over and spread his buttocks to expose his sphincter for inspection.

The plaintiff was also drug-tested before spending another two hours or so in a bullpen with twelve other inmates.

When the plaintiff returned to his cell that afternoon, his cell was in "total disarray." His food and toiletries were open and on the floor and his clothing and property had been damaged by water and cleaning products.

The next morning, September 10, 2009, the plaintiff's cell was shaken down again, and the plaintiff was again restrained from going to work.

On September 11, 2009, the plaintiff was informed that Hosey and Garcia had banned him from the law library. That afternoon, he was taken to segregation. Grievance officers refused to consider the plaintiff's ensuing grievance. The plaintiff sent more letters to the internal affairs department and Warden Ramos.

On September 12, 2009, the plaintiff's segregation cell was shaken down. No shakedown slip was provided.

That night, the plaintiff spoke to a lieutenant in the segregation unit. The lieutenant said that he could not determine why the plaintiff was in segregation, because there were no disciplinary charges pending. The lieutenant advised the plaintiff that he nevertheless could not release him.

On September 13, 2009, an internal affairs investigator interviewed another inmate in a nearby segregation unit cell. The plaintiff stopped the officer to tell him about his issues with Taylor and his placement in segregation without a disciplinary report. The officer took the plaintiff's information but never returned.

On September 14, 2009, the plaintiff asked his counselor to check the tracking system for a disciplinary report. Although the counselor confirmed that there were no disciplinary

6

charges pending against the plaintiff, he remained in segregation. The plaintiff's emergency grievances to the warden and to the Administrative Review Board went unanswered.

On September 17, 2009, the plaintiff received an illegally backdated disciplinary report from Taylor. Defendants Edwards and Niles had signed off on the conduct report. Taylor stated in her report that the conduct report had been rewritten because her original conduct report had gone "missing." The disciplinary report charged the plaintiff with having committed five offenses. None of the facts in the disciplinary report were true; Taylor had wholly invented the infractions. Discrepancies in the dates led the plaintiff to conclude that Majors Edwards and Niles were conspiring with Taylor to circumvent the disciplinary process.

Believing that the time had expired for a hearing, the plaintiff filed another emergency grievance with both the warden and the grievance officer. Neither party acted on the plaintiff's grievance.

On October 2, 2009, the plaintiff was moved to "second stage" (also known as "kick-out status") of segregation.

On October 5, 2009, one of the plaintiff's counselors advised him that the disciplinary report had been expunged. Another adviser told the plaintiff that she could not determine any good reason for his discharge. Nevertheless, the plaintiff was not allowed to return to his prison job or the general population.

## **DISCUSSION**

Accepting the plaintiff's factual allegations as true, the court finds that the complaint states a colorable retaliation claim against defendants Taylor, Edwards, Ramos, Niles, Hosey, and Garcia. Those claims will require further development of the record. However, the plaintiff has failed to articulate a viable claim against either IDOC Director Michael Randle or

Internal Affairs Investigator Darryl Johnson. The plaintiff's due process claim relating to the expunged disciplinary report is likewise dismissed.

**A. Retaliation**

The plaintiff has set forth sufficient facts to support an inference of retaliation. It is well established that "[a]n act taken in retaliation for the exercise of a constitutionally protected right violates the Constitution." *DeWalt v. Carter*, 224 F.3d 607, 618 (7th Cir. 2000); *see also Bounds v. Smith*, 430 U.S. 817, 821 (1977); *Walker v. Thompson*, 288 F.3d 1005, 1008-1009 (7th Cir. 2002). "Otherwise permissible actions by prison officials can become impermissible if done for retaliatory reasons." *Zimmerman v. Tribble*, 226 F.3d 568, 573 (7th Cir. 2000). "To establish a prima facie case of retaliation, a prisoner must show that a protected activity was 'at least a motivating factor' in retaliatory action taken against him, i.e., action that would likely deter protected activity in the future." *Mays v. Springborn*, 575 F.3d 643, 650 (7th Cir. 2009) *quoting Bridges v. Gilbert*, 557 F.3d 541, 546 (7th Cir. 2009). A plaintiff claiming retaliation must allege that: (1) his or her conduct was constitutionally protected, and (2) his or her conduct was a "substantial factor" or "motivating factor" in the defendants' challenged actions. *Abrams v. Walker*, 307 F.3d 650, 654 (7th Cir. 2002), overruled on other grounds by *Spiegla v. Hull*, 371 F.3d 928, 941-42 (7th Cir. 2004). In the case at bar, the plaintiff has met his pleading burden.

According to the plaintiff, he engaged in free speech, both in attempting to explain to defendant Taylor why two-sided copies were unacceptable, and in pressing a fellow inmate to file a grievance; the plaintiff himself also eventually filed his own grievance, in addition to writing letters to supervisory officials concerning his issues with Taylor. The plaintiff's personal grievances are certainly protected, *see, e.g.*, *Stanley v. Litscher*, 213 F.3d 340, 343

(7th Cir. 2000); it can also be argued that the plaintiff's advocacy for Jones tangentially related both to one's right of access to the courts and a prisoner's right to file grievances.

The complaint also sets forth a chronology of events based on which retaliatory animus could plausibly be inferred. Taylor allegedly threatened the plaintiff time after time, others warned the plaintiff that he had a dangerous foe, he received an allegedly fabricated, backdated disciplinary report, he lost his job based on the purportedly false charges, he was subjected to multiple cell searches in a short time frame, officers ordered him to submit to a rectal inspection eight to ten times within a two-hour period, and he was placed in administrative segregation for no apparent reason.

Of course, the defendants may be able either to disprove or to explain away these series of events; speculation based on suspicious timing alone will not be enough to survive a motion for summary judgment. *See Stagman v. Ryan*, 176 F.3d 986, 1001 (7th Cir. 1999). "If the same action would have occurred regardless of the retaliatory motive, the claim fails." *Spiegla v. Hull*, 371 F.3d 928, 942 (7th Cir. 2004) (employment context). In order to establish a triable issue, the plaintiff will have to come forth with concrete evidence of retaliation.

The burden to show that the protected conduct was the motivating factor for the retaliation is "high." *Babcock v. White*, 102 F.3d 267, 275 (7th Cir. 1996). Nevertheless, "[a]t this stage of the proceedings, 'the issue is not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims.' " *Jackson v. Birmingham Bd. of Educ.*, 544 U.S. 167, 184 (2005), *quoting Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974). The plaintiff's allegations are sufficient to withstand a motion to dismiss.

**B. The Plaintiff's Due Process Claim Relating to Administrative Segregation**

Although the plaintiff may sue the defendants for retaliation, he has no separate due process claim. While it is most unfortunate if the plaintiff was wrongfully placed in investigative status–and he may seek redress for retaliation–"being placed in segregation is too trivial an incremental deprivation of a convicted prisoner's liberty to trigger the duty of due process." *Holly v. Woolfolk*, 415 F.3d 678, 679 (7th Cir. 2005), *citing Sandin v. Conner*, 515 U.S. 472, 485-86 (1995); *Paige v. Hudson*, 341 F.3d 642, 643 (7th Cir. 2003). An inmate has no due process liberty interest in remaining free from administrative segregation because such segregation does not impose an "atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *Sandin*, 515 U.S. at 484; *Montgomery v. Anderson*, 262 F.3d 641, 643 (7th Cir. 2001). An inmate has no liberty interest in remaining in the general prison population. *Williams v. Ramos*, 71 F.3d 1246, 1248 (7th Cir. 1995). Administrative segregation for the purposes of institutional safety and security does not trigger a due process right to a hearing. *See Higgs v. Carver*, 286 F.3d 437, 438 (7th Cir. 2002).

Even if Stateville officials violated departmental rules, the matter does not implicate the Constitution. Violations of state law are not, in and of themselves, actionable as constitutional violations. *See, e.g., Scott v. Edinburg*, 346 F.3d 752, 760 (7th Cir. 2003) (explaining that Section 1983 provides a remedy for constitutional violations, not violations of state statutes and regulations); *Archie v. City of Racine*, 847 F.2d 1211, 1216-17 (7th Cir. 1988) (a violation of state law does not give rise to an actionable § 1983 claim unless it independently violates the Constitution or federal law). The plaintiff's due process claim relating to his placement in segregation on the basis of an ultimately dismissed disciplinary report is accordingly dismissed.

## C. Qualified Immunity

The defendants' asserted defense of qualified immunity is groundless. The doctrine of qualified immunity protects government officials from civil liability when performing discretionary functions so long as "their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). As noted above, however, it is well-established that prison officials may not punish an inmate for exercising his First Amendment rights. If the defendants retaliated against the plaintiff, they cannot invoke qualified immunity.

In fact, a complaint is generally not dismissed under Fed. R. Civ. P. 12(b)(6) on qualified immunity grounds. *Alvarado v. Litscher*, 267 F.3d 648, 651 (7th Cir. 2001), *citing Jacobs v. City of Chicago*, 215 F.3d 758, 765 n. 3 (7th Cir. 2000). Because an immunity defense usually depends on the facts of the case, dismissal at the pleading stage is inappropriate. *Id.* "Rule 12(b)(6) is a mismatch for immunity and almost always a bad ground for dismissal. . . ." *Jacobs*, 215 F.3d at 775 (Easterbrook, J., concurring).

## D. The Various Defendants' Personal Involvement

The complaint states tenable claims against Stateville employees Taylor, Edwards, Ramos, Niles, Hosey, and Garcia. At the pleading stage, the court will accept the plaintiff's allegation that the various Stateville officials either participated in or turned a blind eye to the plaintiff's alleged mistreatment. The circumstances described in the complaint (Taylor's alleged threats; the warnings from Taylor and other correctional employees that Taylor and her husband had powerful connections; the suspicious timing, the nature, and the number of cell and bodily searches; and the plaintiff's mysterious transfer to administrative segregation) all tend to paint a picture of harassment and prosecution not just by Taylor, but

by fellow officers in cahoots with her.  The plaintiff may further develop his claims against Taylor, Edwards, Ramos, Niles, Hosey, and Garcia.

The plaintiff has not, however, stated a cause of action against IDOC Director Michael Randle.  Section 1983 creates a cause of action based on personal liability and predicated upon fault; thus, "to be liable under § 1983, an individual defendant must have caused or participated in a constitutional deprivation." *Pepper v. Village of Oak Park*, 430 F.3d 809, 810 (7th Cir. 2005) (citations omitted).  The doctrine of *respondeat superior* (blanket supervisory liability) does not apply to actions filed under 42 U.S.C. § 1983. *See Sanville v. McCaughtry,* 266 F.3d 724, 740 (7th Cir. 2001).

The plaintiff's letter or letters to Randle are insufficient to render him liable for the alleged retaliation by Stateville officials.  "I.D.O.C. administrators cannot be expected to involve themselves with the minutiae of daily events in the lives of thousands of prisoners." *Knox v. Wainscott*, No. 03 C 1429, 2003 WL 21148973, *11 (N.D. Ill. May 14, 2003) (Manning, J.); *see also Volk v. Coler*, 638 F. Supp. 1540, 1549 (C.D. Ill. 1986), aff'd 845 F.2d 1422 (7th Cir. 1988) (letters are insufficient to create personal involvement).  Because the plaintiff has failed to state any facts suggesting that Randle was personally involved in the alleged events giving rise to this lawsuit, Randle is dismissed as a defendant in this matter.

The complaint likewise fails to state a viable claim against Internal Affairs Officer Darryl Johnson.  The plaintiff had no constitutional right to see Officer Taylor or others punished for their alleged retaliation.  The Constitution "does not require the states to prosecute persons accused of wrongdoing." *Strong v. David*, 297 F.3d 646, 650 (7th Cir. 2002).  "A private citizen lacks a judicially cognizable interest in the prosecution or nonprosecution of another." *Linda R.S. v. Richard D.*, 410 U.S. 614, 619 (1973); *see also*

*Leeke v. Timmerman*, 454 U.S. 83 (1981). A purported failure to properly investigate or to impose discipline on the officer(s) in question did not amount to a constitutional violation since the omission was not the cause of the plaintiff's injuries. *See Vukadinovich v. McCarthy*, 901 F.2d 1439, 1444 (7th Cir. 1990); accord, *Barbosa v. McCann*, No. 08 C 5012, 2009 WL 2913488, *6 (N.D. Ill. Sep. 8, 2009) (Pallmeyer, J.). Consequently, Johnson, too, is dismissed as a defendant.

**E. Filing Requirements**

As a final concern, the plaintiff is reminded of basic filing requirements: the plaintiff must (1) sign every document filed; (2) provide the court with the original plus a judge's copy of every document filed; and (3) include a certificate of service showing that a copy was mailed to opposing counsel. In the future, the court may strike without considering any document filed that fails to comport with these basic filing rules.

In sum, accepting the plaintiffs' factual allegations as true, the court finds that the complaint states a colorable cause of action under 42 U.S.C. § 1983. It may be that a more fully developed record may belie the plaintiffs' claims. However, the plaintiff's allegations of a retaliatory "campaign of harassment" state at least a tenable basis for relief under 42 U.S.C. § 1983. Accordingly, the defendants' motion to dismiss the complaint for failure to state a claim is largely denied. The defendants' various attacks on the complaint are more appropriately raised by way of a motion for summary judgment.

**CONCLUSION**

For the foregoing reasons, the defendants' motion to dismiss the complaint for failure to state a claim [document no. 20] is granted in part and denied in part. The plaintiff's due process claim relating to the allegedly false (but dismissed) disciplinary report and his concomitant placement in administrative segregation is dismissed pursuant to Fed. R. Civ. P. 12(b)(6); the complaint is likewise dismissed as to defendants Randle and Johnson. The plaintiff may proceed against all other defendants on his retaliation claim. Defendants Edwards, Hosey, Taylor, Garcia, Ramos, and Niles are directed to answer or otherwise plead within twenty-one days of the date of this order.

Enter:_____

ELAINE E. BUCKLO
United States District Judge

5/28/10

Date: _____